## RUTH BALL v. STATE.

No. A-6965.  Opinion Filed March 29, 1930.
Rehearing Denied April 19, 1930.
(286 Pac. 808.)

146

A. F. Moss, H. R. Young, and C. A. Warren, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Tulsa county of the crime of manslaughter in the first degree, and sentenced by the jury to twenty years imprisonment in the state penitentiary at McAlester, Okla.

The evidence of the state was: That the defendant shot and killed her husband, J. Wade Ball, in the office of deceased's drug store in the city of Tulsa on the 15th day of June, 1927. That defendant went to her and deceased's home near the drug store, got a pistol kept there in the home, and told Mrs. Duffield, a nurse staying in the home, who testified for the state: "Go out there and stay with him. I want to do some talking over the telephone." The nurse testified: That defendant went back into the front room and rang the telephone several times trying to get some one. That she came back out, jerked the door open, slammed the screen, and said, "The battle is on." That the witness asked, "What do you mean by that, Ruth?" to which she answered: "I mean the battle is on.

You and his mother has broke my home up, you can't please him it don't make no difference what you do, I will die and go to the penitentiary before I give my baby up. I have done my last, I am through taking care of the drug store and working." That she went off the porch, went back 'twixt a fast walk and a run towards the drug store. Shortly after this a shot was heard in the back room of the drug store. The defendant ran out, got into a car, and drove off. W. R. Skelton, who worked in the drug store, testified, in substance, that Mr. and Mrs. Ball were arguing in the back part of the store, and almost immediately after reaching the wrapping counter he heard the report of a gun, and rushed back and found the deceased lying on the floor, and that he did not see the defendant; that he called a doctor and the ambulance. Defendant admitted that she shot the deceased, but claimed that deceased was threatening her, and she thought he was going to kill her or do her great bodily injury, and she shot him in her own self-defense.

The defendant first complains that the evidence is insufficient to support the verdict of the jury. While the evidence is conflicting, there is sufficient competent evidence in the record to support the verdict and this contention of the defendant is without merit.

It is next contended that the trial court erred in refusing to give requested instruction No. 1, which reads as follows: "You are instructed that if you believe from the evidence that the deceased Wade Ball, prior to the firing of the shot reached for a glass pestle for the purpose of assaulting the defendant with same and if you further believe that said glass pestle in the manner in which same was being used or about to be used, if same was being used or about to be used, was capable of inflicting death or serious bodily injury upon the defendant, then the defend-

ant had a right to presume that the said Wade Ball, in reaching for said glass pestle, if he did so reach for same, intended then and there to inflict upon the defendant death or serious bodily injury and you will so presume."

This instruction was the only one requested, and is based on the theory of the defendant's right to defend herself against an unlawful attack made upon her by the deceased. In instructing on the law of self-defense, the trial court gave instructions numbered 12, 13, 14, 15, 16, and 17. These instructions are too lengthy to be set out in full in this opinion. It is sufficient to say that the instructions given by the trial court fully covered the law of self-defense as applied to the evidence in this case, and that the refusal to give requested instruction No. 1 was therefore not error. Hawkins v. State, 24 Okla. Cr. 82, 216 Pac. 166; Hamilton v. State, 38 Okla. Cr. 62, 259 Pac. 168; Wheat v. State, 38 Okla. Cr. 119, 259 Pac. 279.

The trial court was justified in refusing to give the requested instruction for the further reason that the same amounted to an indirect comment upon the weight of the evidence and was an invasion of the province of the jury. West v. State, 19 Okla. Cr. 355, 198 Pac. 99.

It is next contended that the trial court erred in overruling the motion for new trial based upon the ground of newly discovered evidence. The alleged newly discovered evidence consisted of the evidence of a witness named Gibbs. The evidence of this witness would have been merely cumulative, and for that reason the motion was properly denied as to his evidence. As to the other witness, Shaffer, there is no showing of diligence, such as is required by the previous holdings of this court, by the defendant in making any effort to procure the attendance of this witness or to secure his testimony prior to the beginning of the trial. This also applies to the witness

Gibbs. The defendant in her affidavit, in substance, says that she was confined in the county jail from the time of the homicide until the time of the trial, and had to depend on her relatives, attorneys, and friends to make diligent search to secure witnesses to prove the facts material to her defense; that she had no knowledge of these witnesses or what they would testify to until after her conviction. A. F. Moss and Harold Moles made affidavits, in substance, that they were attorneys for the defendant and had used every effort possible to secure witnesses to prove any facts material to the defendant and her defense in the case, and that they first learned of F. A. Gibbs and Frank Shaffer and the facts to which they would testify about October 12th and after the verdict of guilty had been returned by the jury. In order to entitle the defendant to a new trial on the ground of newly discovered evidence, section 2754, C. O. S. 1921, must be complied with. The defendant did not make a sufficient showing to justify this court in holding that the trial court abused its discretion in overruling the motion for new trial. The presumption obtains in this court that the trial court properly exercised his discretion in overruling the motion for new trial. Peters v. State, 35 Okla. 367, 250 Pac. 1032.

This court has repeatedly held that motions of this kind are addressed to the discretion of the trial court, and that its action will not be disturbed unless a manifest abuse of this discretion appears. Waller v. State, 19 Okla. Cr. 329, 199 Pac. 224; Hill v. State, 19 Okla. Cr. 406, 200 Pac. 253; Ray v. State, 35 Okla. Cr. 322, 250 Pac. 438; Newman v. State, 35 Okla. Cr. 296, 250 Pac. 554; Carter v. State, 35 Okla. Cr. 421, 250 Pac. 807; McColloch v. State, 45 Okla. Cr. 442, 283 Pac. 1026.

The motion for the new trial was fatally defective because it did not state fully the circumstances which made

it appear that such evidence, as a matter of fact, was newly discovered and could not have been discovered earlier by the exercise of proper diligence. The defendant must set out in the motion facts showing that she used due diligence to procure the testimony. Ryan v. State, 8 Okla. Cr. 624, 129 Pac. 685; Johnson v. State, 21 Okla. Cr. 17, 204 Pac. 311; Carr v. State, 22 Okla. Cr. 371, 211 Pac. 423; Devore v. State, 33 Okla. Cr. 403, 243 Pac. 999; Donahue v. State, 38 Okla. Cr. 87, 259 Pac. 179.

In the case of Johnson v. State, 5 Okla. Cr. 1, 112 Pac. 760, 761, this court had under consideration a showing made for a new trial upon the ground of newly discovered evidence similar to the showing made in this case. Discussing the question of the confinement of the defendant in the county jail pending trial, this court said:

"Defendant alleges that since his arrest on the charge of this case he has been confined in jail and been unable to make any inquiries with reference to the testimony in the case; that he has used all reasonable diligence in procuring evidence in his behalf; and that he did not discover the testimony of the said Lou Johnson and Mollie Ingram until after his conviction. Defendant stated that he had exercised due diligence in procuring testimony in his behalf before the trial began. This is merely the statement of a conclusion. Such an affidavit should state the facts, so as to enable the court to see that due diligence had been exercised. The record shows that the father of the defendant resided at Woodville. With the least effort on the part of the defendant or his counsel he could have been in possession of the alleged facts set up in his motion for new trial long before the trial of this case took place."

The motion for new trial in the case at bar not stating facts showing due diligence on the part of the defendant, the motion was properly overruled.

The defendant next contends that the court erred in overruling her motion for new trial on the ground of the disqualification of the juror Minton. This juror on his voir dire examination said he was not acquainted with the defendant, had not discussed the case with any person, had no bias or prejudice, and had formed no opinion of the guilt or innocence of the defendant. It appears from the evidence in the hearing on the motion for new trial that this juror worked with a brother of the defendant for the Sand Springs Light & Power Company. Some fellow employees of the juror testified that they had read the newspapers and discussed with the juror the facts in the case. The juror took the stand and testified that at the time he qualified as a juror he did not remember that defendant's brother worked for the light company and did not remember that he had discussed the case with any person, that he had no bias or prejudice against the defendant, and voted finally for her conviction because he became convinced of her guilt. The record discloses that Minton was the only juror who at any time voted to return a verdict of "not guilty."

In the case of Stouse v. State, 6 Okla. Cr. 416, 119 Pac. 271, in paragraph 6 of the syllabus, this court said:

"As a general rule, a verdict will not be set aside for reasons that would be sufficient to disqualify a juror on a challenge for cause, which existed before the juror was sworn, but which was unknown to the accused until after the verdict, unless it appears from the whole case that the accused suffered injustice from the fact that the juror served in the case."

This rule was followed in the late case of Suggs v. State, 46 Okla. Cr. 340, 285 Pac. 985. Where the defendant offers evidence to show bias and prejudice and disqualification of a juror, and where the state calls the juror in question and he testifies that he was not biased or

prejudiced, that he did not remember having any of the conversations or making any of the statements sworn to by the defendant's witnesses and had no opinion of the guilt or innocence of the defendant at the time he entered the jury box, this presents a question of fact as to whether the juror was or was not disqualified, which fact was to be determined by the trial court, and, in the absence of a showing of an abuse of discretion, the judge's determination of this question of fact will not be disturbed by this court on appeal. Smith v. State, 5 Okla. Cr. 282, 114 Pac. 350; Horton v. State, 10 Okla. Cr. 294, 136 Pac. 177; Smith v. State, 19 Okla. Cr. 14, 197 Pac. 514.

Where a new trial is asked for upon the ground that a juror who served upon the jury was prejudiced against the defendant and testified falsely upon his voir dire, which prejudice and false evidence was unknown to the defendant prior to the rendition of the verdict, to entitle the defendant to a new trial it must not only be shown that said juror was prejudiced, but it must also appear that the defendant suffered an injustice by reason of the said juror having served on said jury. It not appearing from the record that the defendant suffered any prejudice because the juror Minton served in the trial of the case, the motion for new trial was properly overruled on that ground.

The evidence in the case is conflicting. The defendant relied upon self-defense, and, if her story was to be believed, the jury could have found her "not guilty." On the other hand, the evidence on the part of the state is sufficient to support the verdict and judgment.

The jury having settled the issue of fact against the defendant and in favor of the state, and the evidence being sufficient to support the verdict, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.